UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHOLAS D.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Cause No. 1:18-cv-2736-WTL-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Nicholas D. requests judicial review of the final decision of the Defendant, Andrew M. Saul, Commissioner of the Social Security Administration ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.    APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

that his physical or mental limitations prevent his from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). To be affirmed, the ALJ must

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony presented," she must "provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II. BACKGROUND

The Plaintiff filed for DIB and SSI on November 10, 2015, alleging that he became disabled on October 15, 2015. After denials at the initial and reconsideration levels, the Plaintiff filed a request for a hearing before an ALJ. A video hearing was held on March 12, 2018, before ALJ Genevieve Adamo. An impartial vocational expert appeared and testified. The ALJ issued her decision denying the Plaintiff's claim on April 26, 2018. After the Appeals Council denied her request for review, the Plaintiff filed this timely appeal.

## III. THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ determined that the Plaintiff met the insured status requirements of the SSA through December 31, 2020, and had not engaged in substantial gainful activity since the alleged disability onset date. At steps two and three, the ALJ concluded that the Plaintiff suffered from the following severe impairments: degenerative disc disease, history of degloved left foot, gout, left hip degenerative findings with prior history of acetabular fixation, major depressive disorder, bipolar disorder, obsessive compulsive disorder, and post-traumatic stress disorder. At step four, the ALJ determined that, prior to that date, the Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards such as unprotected heights and dangerous moving machinery; sit/stand option after 30

minutes; can carry out simple instructions and routine and repetitive tasks; cannot perform work requiring a specific production rate such as assembly line work; can maintain attention and concentration for two-hour intervals; can respond appropriately to occasional changes in the workplace; and can have frequent interactions with supervisors, coworkers, and the general public.

R. at 16. The ALJ concluded that the Plaintiff was unable to perform his past relevant work but that there were other jobs in the national economy that the Plaintiff could perform. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in the parties' briefs and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In his brief in support of his complaint, the Plaintiff purports to advance three arguments: (1) the ALJ failed to give adequate weight to the opinion of Plaintiff's treating source per 20 C.F.R. § 404.1527; (2) the ALJ erred at Step 3; and (3) the ALJ's ultimate decision is unsupported.[3]

### A. Weight Given to Opinions of Consultative Examiner and Treating Source

First, the Plaintiff argues that the ALJ erred by giving little weigh to the consultative examiner, Dr. Leah Powell, and the opinion of a treating source, Barbara Wright.[4] He argues that

---

[3]The Plaintiff's third argument is a general argument based on an alleged error in the weight the ALJ gave certain opinions and an alleged Step 3 error. Because the Plaintiff loses as to the first two arguments, his third argument also fails.

[4]Based on the filing date of the Plaintiff's applications, the treating physician rule could apply. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). However, as a mental health counselor, Ms. Wright is not an acceptable medical source. 20 C.F.R. § 1502(a). As such, the ALJ did not have to give her opinion the controlling weight that a treating medical source's opinion would receive. Because Ms. Wright was not an acceptable medical source, the ALJ needed to only consider her opinion and explain the weight given.

"the ALJ provided no rationale to account for consistency between these opinions of a treating source and a consultative examiner." Dkt. No. 12 at 7. Dr. Powell, a psychologist who saw the Plaintiff once in February 2016 to perform a mental status examination, opined: "Given [the Plaintiff's] presentation and current level of functioning it appears that work-related activities are contraindicated." Dkt. No. 10-8 at 54. She assigned him a GAF score of 53, which indicated moderate symptoms or difficulty in social, occupational, or school functioning. She also determined that the Plaintiff had Obsessive Compulsive Disorder and recurrent major depressive disorder, with a history of post-traumatic stress disorder and a provisional diagnosis of bipolar disorder. The Plaintiff endorsed multiple symptoms, including impaired memory and concentration.

Ms. Wright, a mental health counselor, met with the Plaintiff once for thirty minutes in February 2016, about a week after Dr. Powell did. (Dkt. No. 10-9 at 33-36). She opined, "[The Plaintiff is unable to sustain employment and has applied for disability." Dkt. No. 10-9 at 33. The Plaintiff argues that these opinions of Ms. Wright and Dr. Powell are consistent with longitudinal evidence, pointing to (1) records dated September 26, 2016, which showed that the Plaintiff suffered from sleep disturbances and the inability to focus or stay awake during work; and (2) a primary care appointment on July 13, 2017, where the Plaintiff was noted to be depressed and angry and in a lot of pain and where he asked for and received a prescription for Prozac.

The ALJ found the following with regard to the claimant's allegations of limitations from medical impairments:

> The claimant's allegations of limitations from mental impairments were also not supported by the objective medical evidence. Although during the consultative examination by Dr. Powell on February 22, 2016 the claimant was

> noted to have rapid speech, a depressed and anxious mood and affect, and lower than expected remote memory, he was described by Ms. Poe-Ames as having good judgment, a normal mood and affect, and normal recent and remote memory on January 29, 2016 (Ex. 4F, 9F). During an assessment with Ms. Wright a week after the consultative examination, the claimant was noted to have panic attacks but also convincingly denied suicidal ideation and was described as having a good sense of humor (Ex. 8F). Again in September, November, and December 2016, Ms. Poe-Ames and Ms. Wiley observed the claimant to have good judgment, a normal mood and affect, and normal recent and remote memory (Ex. 9F). Moreover, the claimant's record did not indicate that he saw a counselor or therapist for his mental impairments. The claimant was prescribed fluoxetine by his primary care team and testified that it was the best medication he has had (Ex. 9F).

R. at 19. The ALJ gave no weight to GAF score, noting that,

> Although a GAF score can offer some evidence regarding the severity of an individual's mental impairments, it is not dispositive on the issue because it is a mere snapshot of an individual's ability to function at the time of that particular assessment. It also includes factors (such as legal, housing, or financial problems) which are not properly part of the disability analysis under the Social Security Act. Furthermore, the Commissioner of the Social Security Administration has declined to endorse the GAF scale for "use in Social Security and SSI disability programs" and has indicated that GAF scores have no "direct correlation to the severity requirements (of the) mental disorders listings." See 65 Fed. Reg. 50764-65 (August 21, 2000).

R. at 20. Further, the ALJ assigned weight as follows to the opinions of Dr. Powell and

Ms. Wright:

> The Administrative Law Judge gives little weight to the consultative examination by Dr. Powell (Ex. 4F). Dr. Powell opined that work activities were contraindicated, and this is ultimately unsupported by the longitudinal evidence. Similarly, Ms. Wright noted that the claimant was unable to sustain employment (Ex. 8F), and the Administrative Law Judge gives this little weight for the same reason described. Further, Ms. Wright is not an acceptable medical source.

*Id.*

The Court finds that the ALJ's adequately articulated why she gave each opinion the weight she did, entitling her decision to deference. *See Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008). Because Ms. Wright was not an acceptable treating medical source, the ALJ needed only to consider her opinion and explain the weight given. *See* 20 C.F.R. § 404.1527. The

6

ALJ did so. Likewise, the opinion of non-treating source Dr. Powell was not entitled to controlling weight. The ALJ explained why she gave little weight to those opinions and cited to records that supported her determination that Ms. Wright's and Dr. Powell's assessments lack support from the record.

The Plaintiff also points to records from September 26, 2016, that showed sleep disturbances and the ability to focus or stay awake during work and records from July 13, 2017, that noted that the Plaintiff was depressed, angry, in a great deal of pain, and asked for and received a prescription for Prozac. However, the September 26, 2016, records show that the Plaintiff reported sleep disturbance because he was working evening shifts. The records note "shift work disorder" and "work shift change." Dkt. No. 10-10 at 11. With regard to the July 13, 2017, records, a follow-up visit that occurred on July 27, 2017, indicate that Plaintiff is "'200%' better. He's actually happy and smiling today. Says life is better." Dkt. No. 10-11 at 4.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). However, the ALJ did not commit such an error. Rather, she analyzed evidence that both supported and undermined her ultimate conclusion. As such, no error occurred.

**B. Step 3 Error**

The Plaintiff's entire argument on this alleged error is as follows:

7

> 2. **The ALJ Erred at Step 3:**
>
> Because she failed to properly weigh opinion evidence, the ALJ erred at Step 3 when she determined that Plaintiff did not have an impairment, or combination of impairments that met or equaled the severity of any listed impairment. In the original brief dated February 28, 2018, it was asserted that Plaintiff's arthritis status post hip replacement should be evaluated under Listings 1.03 and 1.04 due to his chronic and persistent decreased range of motion, positive straight leg raise, and bone on bone joint space narrowing with severe degenerative findings in the left hip status post fixation (Exhibit 10F, p. 5), compounded by depression with serious limitations in his inability to interact with others, and decreased concentration as noted by both treating source and consultative examiner. Had the ALJ given more weight to mental opinion evidence, work would be precluded by a combination of physical and psychological impairment which would significantly erode his occupational base. This issue requires remand.

Dkt. No. 12 at 8.[5]

The Plaintiff fails articulate any cogent argument on Step 3. In his reply brief, the Plaintiff claims that he "is simply arguing that his combination of impairments from mental *and* physical impairments, both adequately discussed in the original brief dated February 28, 2018, resulted in greater limitations than those assessed by the ALJ." Dkt. No. 15 at 2. It is unclear to the Court how this argument relates to Step 3; the Plaintiff does not even attempt to articulate

---

[5]The "original brief" contains the following argument:

> Based on the medical evidence detailed above, along with testimony, [the Plaintiff] is incapable of performing substantial gainful activity on a full time, competitive, and sustained basis. His facet arthritis and osteoarthritis should be evaluated under Listing 1.03 and 1.04A as evidenced by medical imaging, positive straight raise leg testing and the inability to have full range of motion despite a hip replacement.

Dkt. No. 10-7 at 78.

8

how his combined impairments meet or equal a Listing. Indeed, at no point does the Plaintiff articulate what is required for a claimant to meet Listing 1.03 or 1.04.[6] "It is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *see Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")). The Plaintiff has not demonstrated that remand in required on this issue.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 6/26/2019

*William T. Lawrence*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[6] In the Plaintiff's statement of issues, he indicates that the ALJ erred at Step 3 by failing to determine that the Plaintiff's combination of impairments equaled Listings 12.04/12.06. However, the brief itself mentions Listings 1.03 and 1.04.